# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DELBERT M. GREENE,

    *Petitioner*,

vs.

E.K. MCDANIEL,

    *Respondent*.

3:09-cv-00601-ECR-VPC

ORDER

    This represented habeas matter comes before the Court on petitioner's motion (#39) for a stay in order to exhaust unexhausted grounds in state court.

### *Background*

    Petitioner Delbert Greene challenges his Nevada state conviction, pursuant to a jury verdict, of burglary while in possession of a deadly weapon, conspiracy to commit robbery, and robbery with the use of a deadly weapon.

    The Court refers to its recital of the extensive prior state and federal procedural history in its prior order (#38). Petitioner currently presents three grounds. In Ground 1, he alleges that he was denied effective assistance of counsel in violation of the Sixth Amendment at a 2004 resentencing. In Ground 2, petitioner alleges that he was denied effective assistance of counsel in violation of the Sixth Amendment when the state district court entered a second amended judgment of conviction in 2009 without an opportunity for either petitioner or counsel to be present. In Ground 3, petitioner alleges that he was subjected to double jeopardy in violation of the Fifth Amendment when the punishment was enhanced on both the burglary and robbery charges based upon his co-conspirator's possession of a weapon.

In its most recent order (#38), the Court held: (a) that the petition, in its entirety, is not successive under the Supreme Court's recent decision in *Magwood v. Patterson*, ___ U.S. ___, 130 S.Ct. 2788, 177 L.Ed.2d 592 (2010), because of the entry of the intervening 2009 amended judgment of conviction in the state courts; (b) that, as a corollary extension of the *Magwood* holding, all of the claims in the petition are timely because the action was filed within one year of the intervening 2009 amended judgment and the current claims relate back to a timely-filed pleading; and (c) that, also as a corollary extension of *Magwood*, Grounds 1 and 3 are not exhausted because petitioner never challenged the intervening 2009 amended judgment on these grounds.

In the current motion, petitioner seeks: (a) a stay under *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), without dismissal of the unexhausted claims; or (b) in the alternative, if he is unable to obtain a stay under *Rhines*, a stay under *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003), with, in effect, a dismissal without prejudice of the unexhausted claims.[1]

***Discussion***

***Rhines Stay***

In order to seek a *Rhines* stay to return to the state courts to exhaust a claim or claims, a petitioner must demonstrate that there was good cause for the failure to exhaust the claims, that the unexhausted claims include at least one claim that is not plainly meritless, and that

---

[1] A habeas petitioner may seek two different types of stays in this context.

First, a petitioner may seek a stay under *Rhines*. When a habeas matter is stayed under *Rhines*, the unexhausted claims are not dismissed, and the entire petition is stayed while the petitioner returns to state court to exhaust the unexhausted claims. *See King v. Ryan*, 564 F.3d 1133, 1139 (9th Cir. 2009).

Second, a petitioner may seek a stay under *Kelly*. When a habeas matter is stayed under *Kelly*, the unexhausted claims are dismissed, the remaining claims are stayed while the petitioner exhausts the dismissed claims, and the petitioner must amend the federal petition after the claims are exhausted if he wishes to again present the claims in federal court. *See,e.g., King,* 564 F.3d at 1138-39.

On the alternative request for a *Kelly* stay, petitioner submits a proposed amended petition that would include only the exhausted ground. Petitioner in effect would be dismissing the unexhausted grounds without prejudice under such a procedure.

1  petitioner has not engaged in intentionally dilatory litigation tactics.  *See* 544 U.S. at 278, 125
2  S.Ct. 1535.

### *Good Cause*

While the precise contours of what constitutes "good cause" in this context remain to be fully developed in the jurisprudence, the Ninth Circuit has held that a requirement that the petitioner show "extraordinary circumstances" to obtain a stay does not comport with the good cause standard in *Rhines*. *See Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005).  The undersigned concluded in *Riner v. Crawford*, 415 F.Supp.2d 1207 (D.Nev. 2006), following upon the Ninth Circuit's holding in *Jackson*, that the good cause standard under *Rhines* therefore is not so strict a standard as to require a showing of some extreme and unusual event beyond the control of the petitioner to warrant a stay.  415 F.Supp.2d at 1210.[2]  On the other hand, *Rhines* instructs that a stay should be available only in "limited circumstances," and the requirement of good cause therefore should not be interpreted in a manner that would render stay orders routine.  *Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008). Accordingly, a mere impression by a petitioner that a claim was exhausted is not sufficient to establish good cause for a failure to exhaust, given that, if it were, "virtually every habeas petitioner, at least those represented by counsel, could argue that he *thought* his counsel had raised an unexhausted claim and secure a stay." *Id.* (emphasis in original).

In the present case, the Court finds that petitioner had good cause for not having exhausted Grounds 1 and 3 as grounds challenging the intervening 2009 amended judgment.

First, it would have been exceedingly difficult for a petitioner – whether represented or not – seeking state relief to foresee the *Magwood* decision and further to predict how the decision would relate to the exhaustion requirement.  A comparison between how this Court

---

[2]In *Riner*, the Court's order was issued following a remand from the Ninth Circuit for reconsideration of its dismissal order in light of the intervening authority in *Rhines*.  The Court did not hold that Riner either had or had not demonstrated good cause.  The order instead gave Riner an opportunity *to* demonstrate good cause and the other requirements for a *Rhines* stay.  Riner thereafter did not seek such a stay but instead sought reconsideration of the Court's prior holding that the claims in question were unexhausted. See,e.g., No. 3:99-cv-0258-ECR-RAM, #72.  The published *Riner* decision therefore did not make a definitive holding as to good cause applicable to a then-attempted specific factual demonstration of good cause.

1 analyzed the successive petition, timeliness and exhaustion issues in orders issued prior to
2 and after the *Magwood* decision highlights how markedly the decision altered at least this
3 Court's perception of how the law on each of these points applied in this procedural setting.
4 *Compare* #22 *with* #38.  When this Court analyzed the exhaustion issue after *Magwood*, it
5 referred to the "novel context" presented vis-à-vis forecasting the consequences of *Magwood*
6 to application of exhaustion rules.

7 Regardless of whether – or not – petitioner presented the claims in Grounds 1 and 3
8 in attacking prior judgments, he would have had little inkling prior to *Magwood* and this Court's
9 application of *Magwood* that he needed to specifically challenge the *2009 amended judgment*
10 on these grounds to exhaust the claims *qua* a challenge to that intervening judgment.
11 Respondents point to an alleged failure to exhaust the claims previously.  However, the only
12 good cause that petitioner need have is good cause for the failure to satisfy the only
13 exhaustion requirement that is applicable in this context.  And that requirement is one that
14 petitioner exhaust the claims as an attack on the 2009 amended judgment.  Petitioner had
15 good cause for not having sought to do so previously, given the changing law and novel
16 procedural context presented.[3]

17 Second, petitioner was represented *pro bono* in this matter for an extended period by
18 counsel as to whom the Court ultimately had to terminate her representation in both this and
19 another case[4] following upon issues that compromised her ability to represent her clients
20 effectively.  The Court had not appointed former *pro bono* counsel, and a petitioner of course
21 has no constitutional right to counsel in state or federal post-conviction proceedings.  Yet a
22 petitioner does not need to satisfy either the "cause" standard required to overcome a
23 procedural default or the "extraordinary circumstances" standard required to overcome a

---

[3] The prospect that the state courts nonetheless might find the claims procedurally barred under state law on, *inter alia*, the ground that the claims could have been raised prior to the 2009 amended judgment is another matter for another day.  *Cf. Magwood*, 130 S.Ct. at 2801-02 (observing that application of state law procedural default rules likely would preclude extensive relitigation as a consequence of the court's holding).

[4] See No. 3:08-cv-00687-ECR-WGC, *McCaskill v. Budge*, #37 (Jan., 18, 2011).

-4-

federal time-bar in order to demonstrate good cause under *Rhines*. The fact that the Court had to take the highly extraordinary step of terminating the representation of prior counsel further reinforces its conclusion that petitioner had good cause – in contemporaneous state proceedings – for not exhausting Grounds 1 and 3 previously as an attack on the 2009 amended judgment in the novel procedural context presented.

The Court accordingly holds that petitioner had good cause for the failure to exhaust Grounds 1 and 3 under the applicable standard as a challenge to the 2009 amended judgment.[5]

### *Not Plainly Meritless*

The *Rhines* Court made a comparison cite to 28 U.S.C. § 2254(b)(2) with regard to this inquiry. 544 U.S. at 277, 125 S.Ct. at 1535. The Ninth Circuit has held that a district court may reject an unexhausted claim on the merits pursuant to § 2254(b)(2) "only when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005).

---

[5] The Court's analysis does not necessarily track the good-cause arguments presented by petitioner. The arguments presented on all of the factors discussed herein, by both sides, in the main stray far afield from the applicable standards and analysis as well as from the factual record in this case. The Court simply has applied the correct analysis herein without specifically detailing why each and every one of the sundry arguments, on both sides, misses the mark.

For example, petitioner refers in the reply, #41, at 4, to a Nevada state law requirement that counsel be appointed on the first state petition where a petitioner has been sentenced to death. Greene never was sentenced to death in this case.

For another example, the Court remains unpersuaded by respondents' argument that the Court should apply the "extraordinary circumstances" standard applicable under an equitable tolling analysis to the good-cause inquiry under *Rhines*. The Ninth Circuit held in *Jackson* that an "extraordinary circumstances" standard was not applicable, and the Ninth Circuit in *Wooten* adhered to this holding. *Jackson*, 425 F.3d at 661-62; *Wooten*, 540 F.3d at 1023-24. This Court must follow Ninth Circuit precedent in this regard. The Court, consistent with that precedent, will not equate "good cause" with the "extraordinary circumstances" required for equitable tolling. Nor will the Court follow an analysis that potentially would make the procedural question of whether to enter a stay turn upon a full evidentiary hearing as might be required to resolve an equitable tolling issue.

Given the controlling Ninth Circuit law, the Court repeatedly has rejected respondents' argument for application of the "extraordinary circumstances" equitable tolling standard in this context. *See, e.g. Vincent v. Director*, 3:10-cv-00181-ECR-RAM, #23, at 7 n.6 (D.Nev., July 15, 2011); *Taylor v. McDaniel*, No. 3:08-cv-00401-ECR-VPC, #59, at 2-3 (D.Nev., April 5, 2011).

1  Ground 1 certainly clears this quite low bar.  Petitioner alleges therein that his counsel
2 sent an associate attorney to the 2004 resentencing who had no knowledge of the case and
3 who made no argument against the allegedly harsher sentence imposed.

4  The Court thus does not consider whether Ground 3 also is not plainly meritless.  A
5 petitioner need demonstrate that he has only one claim that is not plainly meritless in order
6 to obtain a stay.

7  Respondents refer to the proposition that an alleged violation of a state constitutional
8 right is not cognizable in federal habeas corpus.  However, both grounds plainly allege
9 violation of federal constitutional rights.

10  The Court accordingly holds that the unexhausted claims include at least one claim
11 that is not plainly meritless.

### *No Intentionally Dilatory Litigation Tactics*

13  Nothing in the record before the Court reflects that petitioner has engaged in
14 intentionally dilatory tactics.  While it perhaps is not utterly inconceivable that a noncapital
15 habeas petitioner might engage in intentionally dilatory tactics, the relevance of this factor,
16 as a practical matter, largely is restricted to capital cases.[6]

17  Respondents seek to take petitioner to task because the motion for a stay states at
18 one point or another that a state petition had been filed while one had not at that time.  (The
19 motion also stated at another point instead that a motion would be filed within ten days of a
20 grant of the motion for a stay.)  Petitioner subsequently has filed the state petition.

21  This debating point between the parties is not material to the Court's adjudication of
22 the stay motion.  Typically, the Court requires that a petitioner seek state relief within 30 to
23 45 days of entry of the order granting the motion for a stay.  Petitioner's counsel perhaps

---

[6] *Cf. Lawrence v. Florida*, 549 U.S. 327, 344 & n. 9,127 S.Ct. 1079, 1090 & n.9, 166 L.Ed.2d 924 (2007)(Ginsburg, J., dissenting)("Most prisoners want to be released from custody as soon as possible, not to prolong their incarceration. They are therefore interested in the expeditious resolution of their claims. . . . . Though capital petitioners may be aided by delay, they are a small minority of all petitioners."); *Valdovinos v. McGrath*, 598 F.3d 568, 574 (9th Cir. 2010), *vacated for reconsideration on other grounds*, 131 S.Ct. 1042 (Jan. 24, 2011)(petitioner "had not engaged in dilatory tactics and he had no motivation for delay, as he is not a capital defendant").

1 misspoke in stating at one point, but not another, that a petition already had been filed when
2 it had not. Whether a petition was filed at the time of the motion or not simply has no material
3 bearing on the Court's analysis of the issues presented.

4 Following consideration of the *Rhines* factors, the motion for a stay accordingly will be
5 granted.[7]

6 The Court expresses no opinion -- by this order -- as to whether the circumstances
7 presented satisfy the cause and prejudice standard with respect to any claim of procedural
8 default. The holding herein should not be read as an express or implied holding on this issue
9 or any other issue. The Court holds here only that the criteria for a stay under *Rhines* have
10 been satisfied, and its holding in this order is expressly limited to that specific context.

11 IT THEREFORE IS ORDERED that petitioner's motion (#39) for a stay is GRANTED
12 and that this action is STAYED pending exhaustion of the unexhausted claims. Petitioner
13 may move to reopen the matter following exhaustion of the claims, and any party otherwise
14 may move to reopen the matter at any time and seek any relief appropriate under the
15 circumstances.

16 IT FURTHER IS ORDERED that, taking into account that state post-conviction
17 proceedings already have been commenced, the grant of a stay is conditioned upon petitioner

---

[7] Respondents request that the Court give an instruction to petitioner that, "absent truly extraordinary and unforeseeable circumstances," he must bring only exhausted claims upon his return to federal court. #57, at 11, lines 22-25. Respondents rely upon *Slack v. McDaniel*, 529 U.S. 473, 489, 120 S.Ct. 1595, 1606, 146 L.Ed.2d 542 (2000). The petitioner in that case conceded that such an instruction would be "appropriate" in the procedural context discussed there. That context was one where a *pro se* petitioner had dismissed a prior mixed petition and then refiled in a new action after exhaustion. In *Slack*, the Supreme Court held that such a petition was not a successive petition. The Supreme Court referred to the above instruction as one, of many, possible protections outside of the successive petition rules against a petitioner simply filing a series of mixed petitions. *See* 529 U.S. at 488-89, 120 S.Ct. at 1606. Such an instruction would not serve any useful purpose in the present procedural context, particularly given the impact of the federal one-year limitation period. *Cf. Slack*, 529 U.S. at 478-79, 120 S.Ct. at 1601 (both the first federal petition in 1991 and the second petition in 1995 were filed prior to the effective date of AEDPA). Petitioner is represented by federal habeas counsel who indisputably is aware of the exhaustion requirement, and there are few circumstances where this Court would grant a request for a second stay. Instructing a knowledgeable federal habeas practitioner that the Court will consider further unexhausted claims after a stay only in "truly extraordinary and unforeseeable circumstances," at best, merely states the obvious as to a dispute that may never arise. At worst, such an instruction would provide scant true guidance in resolving such a dispute should the situation arise. The Court will cross the bridge of how to address any additional unexhausted claims, and any circumstances leading to the presentation of such unexhausted claims, if and when such a situation is presented.

returning to federal court with a motion to reopen within forty-five (45) days of issuance of the remittitur by the Supreme Court of Nevada at the conclusion of all state court proceedings.[8]

IT FURTHER IS ORDERED that, with any motion to reopen filed following completion of all state court proceedings pursued, petitioner: (a) shall attach an indexed set of exhibits (with the corresponding CM/ECF attachments identified by exhibit number(s) on the docketing system) containing the state court record materials relevant to the issues herein that cover the period between the state court exhibits on file in this matter and the motion to reopen; and (b) if petitioner then intends to further amend the petition, shall file a motion for leave to amend along with the proposed verified amended petition or a motion for extension of time to move for leave.[9]  Respondents shall have thirty (30) days to file a response to the motion or motions filed.  The reopened matter will proceed under the current docket number.

IT FURTHER IS ORDERED that the Clerk of Court shall ADMINISTRATIVELY CLOSE this action until such time as the Court grants a motion to reopen the matter.

DATED:   April 3, 2012.

_____
EDWARD C. REED
United States District Judge

---

[8] If *certiorari* review will be sought or thereafter is being sought, either party may move to reinstate the stay for the duration of any such proceedings.  *Cf. Lawrence v. Florida*, 549 U.S. 327, 335, 127 S.Ct. 1079, 1084, 166 L.Ed.2d 924 (2007).

[9] No claims in the current pleadings are dismissed by this order.

-8-